**UNITED STATES, Appellee,**

v.

**Bertram N. LEE, Sergeant, U.S. Marine
Corps, Appellant.**

No. 58,185.
NMCM 86 1718.

U.S. Court of Military Appeals.

April 3, 1989.

For Appellant: *Lieutenant Colonel A.J. Roach*, USMC (argued); *Commander J.A. Williams*, JAGC, USN and *Major J.L. Powers*, USMC (on brief); *Lieutenant Commander Robert J. Smith*, JAGC, USN and *Captain Mark Foster*, USMCR.

For Appellee: *Lieutenant Commander Lawrence W. Muschamp*, JAGC, USN (argued); *Captain Wendell A. Kjos*, JAGC, USN (on brief); *Lieutenant Commander L. Friedman*, JAGC, USN.

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-martial composed of a military judge alone at Marine Corps Air Station, Kaneohe Bay, Hawaii, during November and December 1985. Contrary to his pleas, he was found guilty of committing indecent acts upon the body of a female under 16, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a bad-conduct discharge, confinement for 9 months, partial forfeitures, and reduction to pay grade E–1. The convening authority approved the sentence, and the Court of Military Review affirmed in an unpublished opinion on April 7, 1987.

This Court granted review of the following two issues on November 13, 1987:

### I

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY ADMITTING INTO EVIDENCE THE ALLEGED VICTIM'S OUT OF COURT STATEMENT TO HER MOTHER UNDER THE EXCITED UTTERANCE EXCEPTION TO THE HEARSAY RULE.

### II

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY ALLOWING A CLINICAL PSYCHOLOGIST TO TESTIFY, OVER DEFENSE OBJECTION, THAT THE ALLEGED VICTIM'S SYMPTOMS WERE CONSISTENT WITH A TRAUMATIC, POSSIBLY SEXUAL, EXPERIENCE.

On November 10, 1988, this Court heard oral argument on this appeal, which we now resolve in favor of the Government.

The record shows that appellant was charged with committing indecent acts on the 7–year–old daughter of a neighbor. This offense allegedly occurred on March 31, 1985. The prosecution introduced evidence that this offense occurred in appellant's portion of a duplex which he shared with this neighbor at Marine Corps Air Station, Kaneohe Bay, Hawaii. The 7–year–old victim testified that appellant

"stuck his finger in my private" and "[a]t my private." Appellant denied molesting this girl or touching her in her genital or vaginal area.

The prosecution, in attempting to prove its case, called the mother of the alleged victim. She testified that shortly after eight o'clock on the night in question, her daughter spoke to her concerning the alleged crime and identified appellant as the perpetrator. Defense counsel objected to this testimony as hearsay, and the military judge sustained that objection until the victim herself testified.

The victim herself later testified as part of the Government's case. She testified on three occasions without defense objection that she told her mother about appellant's acts on her. Later, the victim's mother was again called to the stand and, over defense objection, stated:

> Q. Mrs. [M], can you recall what Melissa told you that night had happened?
> A. Yes. She told me that Big Bert had messed with her. No, wait, she told me that Bert had messed with her. I asked her, "Big Bert?" and she said yes. I asked her where and she indicated the upper part of her thighs, and I asked her to show me where and it was her private area. She said that he rubbed his hand there very hard, that it caused a stinging sensation.
> Q. She said in her private area?
> A. Yes.
> Q. Did she show you what—
> A. Well, she indicated the private area.
> Q. Her genital area? Vaginal area?
> A. Yes.

The military judge had previously ruled that this testimony was admissible hearsay under Mil.R.Evid. 803(2), Manual for Courts–Martial, United States, 1984, because it constituted an excited utterance.

The prosecution, as part of its case-in-chief, also called Dr. Joyce Pobanz as an expert witness. Her testimony was offered to show the alleged victim was suf-

fering from post-traumatic stress disorder. Defense counsel objected on the basis that this non-medical doctor lacked qualifications to provide this expert testimony and that her testimony was, *inter alia*, inadmissible under Mil.R.Evid. 401–403.

## I

The military judge in this case admitted the testimony of the victim's mother concerning her daughter's complaint against appellant as an excited utterance under Mil. R. Evid. 803(2). This ruling allowed the judge to consider this testimony for all purposes, including its use as corroborative evidence of the victim's trial testimony [1] and as substantive evidence that the reported offenses actually occurred. *See generally United States v. Sandoval*, 18 MJ 55, 63–64 (CMA 1984). It also could be considered as evidence rehabilitating the victim's credibility. *See* Mil. R.Evid. 801(d)(1)(B); *United States v. LeMere*, 22 MJ 61, 69 (CMA 1986). In any event, we note that three times the victim herself had already testified that she complained to her mother about appellant's touching her in her private parts. *Cf. United States v. Quick*, 26 MJ 460, 462 (CMA 1988). Defense counsel did not object to this testimony. Mil. R. Evid. 103; *cf. United States v. Arnold*, 25 MJ 129, 131 (CMA 1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988); *United States v. LeMere, supra* at 65. Thus, the military judge had other evidence of the fact of this complaint before him which he could properly consider for the above purposes in determining whether the charged offenses occurred. Accordingly, in view of the cumulative nature of the challenged evidence, any error in its admission for these purposes under Mil. R. Evid. 803(2) was harmless. Art. 59(a), UCMJ, 10 USC § 859(a). *See United States v. Ray*, 26 MJ 468, 472 (CMA 1988); *United States v. Mann*, 26 MJ 1, 5 (CMA), *cert. denied*, — U.S. ——, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988).

---

1. The military judge's special findings indicate only this use: "Point Six. I've also considered that Melissa reported the incident to her mother soon after it had occurred. The proximity of the timing of her statement to the event and her emotional state at the time are highly indicative of truthfulness."

■ Of course, the challenged evidence was not cumulative in one respect: It had a unique incidental effect in that it also independently and directly corroborated the victim's credibility. This testimony was evidence from someone other than the victim which tended to show that she had made such a complaint as she had earlier testified in this court-martial. *See generally* E. Imwinkelreid, P. Giannelli, F. Gilligan, F. Lederer, *Courtroom Criminal Evidence* §§ 702 and 718 (1987); IIIA Wigmore, *Evidence* § 874(2) (Chadbourn rev.1970). We note, however, that defense counsel's only objection to use of the mother's testimony concerning this complaint was lack of relevance. *See* Mil.R.Evid. 401, 402. *Cf.* VI Wigmore, *Evidence* § 1908 (Chadbourn rev.1976). Moreover, he virtually conceded that the victim had made this complaint to her mother.[2] Accordingly, admission of the evidence for this incidental purpose, even if improper under Mil.R.Evid. 803(2), was clearly not materially prejudicial in this case. Art. 59(a); Mil.R.Evid. 103(a).

## II

The second granted issue asks whether Dr. Pobanz' expert testimony that the victim's symptoms were consistent with a traumatic, possibly sexual, experience was properly admitted at appellant's court-martial. Appellant's initial objection is that Dr. Pobanz was not a medical doctor or otherwise qualified to give this testimony. Mil.R.Evid. 702. He then asserts that her testimony was irrelevant, unduly prejudicial, and improper corroboration. *See* Mil.R. Evid. 401, 402, 403, 608. We disagree.

■ Dr. Pobanz testified that she was not a medical doctor but she did have three degrees in psychology and some experience in these types of cases. The military judge expressly found that she was an expert in clinical psychology and in treatment of sexually abused patients. Based on this record, we find no error in this determination. *See United States v. Toledo*, 25 MJ 270 (CMA 1987), *cert. denied,* — U.S. ——, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988); *cf. United States v. Carter*, 26 MJ 428, 430 (CMA 1988); *United States v. Petersen*, 24 MJ 283 (CMA 1987). The relevance objection to her testimony is also without merit. *United States v. Tolppa*, 25 MJ 352 (CMA 1987); *United States v. Toledo, supra; United States v. Snipes*, 18 MJ 172, 179 (CMA 1984). Finally, the military judge's special finding clearly indicates that no undue prejudice to appellant inured from this testimony, and it was not used by the judge to improperly corroborate the victim.[3]

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

COX, Judge (concurring):

I concur. *United States v. Arnold*, 25 MJ 129 (CMA 1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988).

2. TC: Your Honor, first off, before we get into the exception to the hearsay, at this point the Government's going to offer it not for the truth of the matter asserted but merely that Melissa had in fact reported this and what she reported. At this point in time the Government's not offering it for the truth of what Melissa stated, merely that Melissa had stated it. And after we—that's—right now that's what we've got.

MJ: Defense counsel's position?

DC: And what's the relevance of that, sir, if it's not offered for the truth of the matter. It's already been testified to as to the fact that there was a report which triggered a number of events. I think that's before the court. What the relevance of this testimony?

TC: If in fact it's before the court, then I won't offer it for that purpose. Government has questions as to whether or not it's before the court based on rulings and argument that were going on before. If—

3. "Seven, I gave some weight to Dr. Pobanz' testimony. However, to be completely truthful, I gave it very little weight because in my opinion, if Melissa had lied when she reported the assault to her mother, I think that all the attention obviously focused upon her thereafter by the Naval Investigative Service, her family, the medical officer and the psychologist might have caused a reaction far from the norm, i.e., that her behavior would also be consistent with a false report of sexual assault. On the bottom line, I was convinced by the forthright, unwavering testimony of Melissa and her appearance in court."